UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WEN YU,

Plaintiff,

v.

MEESHA SIDHU,

Defendant.

Case No. C25-5203-JNW-MLP

REPORT AND RECOMMENDATION

Plaintiff Wen Yu ("Plaintiff" or "Mr. Yu"), who is currently detained at Western State Hospital ("WSH"), filed this action under 42 U.S.C. § 1983. This matter is before the Court on Defendant Meesha Sidhu's ("Defendant" or "Dr. Sidhu") Motion for Summary Judgment. (Mot. (dkt. # 66).) Through counsel, Plaintiff filed an opposition to the Motion (Resp. (dkt. # 73)), and Defendant filed a reply (Reply (dkt. # 75)). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Defendant's Motion (dkt. # 66) be GRANTED.

## I. BACKGROUND

There is no dispute that on December 12, 2024, Mr. Yu was involuntarily medicated pursuant to a state trial court order. (*See* Mot. at 3, Resp. at 6.) Plaintiff, in an unsigned and

unverified response to interrogatories, asserts that during the medication injection "multiple staff members physically restrained" him, he was "struck and bruised during this process," and he experienced "rib pain" after.[1] (First Pavela Decl. (dkt. # 67), ¶ 5, Ex. C at 3.) Plaintiff does not provide any evidence of his own behavior before, during, or after the involuntary medication. Plaintiff's counsel states in a sworn declaration that Mr. Yu is "5 feet 2 inches tall and weighs less than 120 pounds." (Rossi Decl. (dkt. # 74), ¶ 2.)

Dr. Sidhu stated in his sworn declaration that he has reviewed records and has a "limited" recollection of the December 2024 incident. (Sidhu Decl. (dkt. # 70), ¶¶ 4-5.) Dr. Sidhu explained that his usual practice when operating under a court involuntary medication order, after a patient refuses oral medication, is for WSH staff to "engag[e] in a hold of the patient, to restrain the patient, so that a nurse could administer an injection, in a safe manner."[2] (*Id.*, ¶ 6.) "[R]estraints would be utilized if a patient is displaying threatening behavior." (*Id.*) Dr. Sidhu avers he "did not strike or hit or seek to harm Mr. Yu" and, to the best of his recollection, he "held one of his limbs, in conjunction with security personnel, so that a nurse could administer" the injection. (*Id.*, ¶ 8.) Dr. Sidhu stated that he "would remember" if he witnessed anyone striking or harming a patient and would have reported it. (*Id.*, ¶ 9.) Dr. Sidhu also "do[es] not recall Mr. Yu complaining of any physical pain after he was medicated." (*Id*, ¶ 12.) If Mr. Yu had, Dr. Sidhu "would have ensured he had access to medical care[.]" (*Id.*)

---

[1] Plaintiff's signed amended complaint similarly alleges that he was struck and sustained rib injuries. (Am. Compl. (dkt. # 6) at 7-8.)

[2] The parties agree that evidence of routine practice is admissible. (Mot. at 9; Resp. at 7; *see also* Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice.").)

Michelle Roder, a Registered Nurse, stated in a sworn declaration that she does not recall the December 2024 incident in detail but she reviewed records indicating she and another RN participated. (Roder Decl. (dkt. # 69), ¶ 2.) She reports that, after a patient refuses compulsory medication, "[p]rotocol dictates that if a patient remains resistant or exhibits signs of agitation, security personnel are notified for assistance." (*Id.*, ¶ 4.) She has "never seen anyone get hurt during a manual hold" and has "never seen security strike a patient during any involuntary medication procedure." (*Id.*, ¶ 7.) If she had "ever witnessed abuse, excessive force, or improper conduct toward a patient, [she] would be required to report it." (*Id.*, ¶ 8.)

Ms. Roder attached to her declaration medical records relating to the incident. (Roder Decl., ¶ 10, Ex. A.) According to a report she signed on December 12, 2024, after Mr. Yu refused oral medication, he "became angry and agitated, posturing aggressively toward staff" whereupon a "manual hold was initiated due to immediate danger, and an IM [intramuscular] injection was administered." (*Id.*, Ex. A at 15; *see also id.* at 6 (Mr. Yu "appeared agitated yelling cursing the staff and fighting the staff.").) Mr. Yu continued to display "hostility, resistance to redirection, and escalating anger and irritability" and was "increasingly aggressive and agitated, shouting, resulting in placement in a five-point restraint" for 32 minutes. (*Id.*, Ex. A at 15.) "No injuries were reported." (*Id.*) Mr. Yu denied pain after the incident. (*Id.*, Ex. A at 4, 9.)

WSH Security Guard Rollin Mixon stated in a sworn declaration that records show he was one of the staff members present for the "physical hold during [Mr. Yu's] involuntary medication" although Mr. Mixon does not remember the event. (Mixon Decl. (dkt. # 68), ¶¶ 2, 4.) Mr. Mixon described his general practice to "follow the directions of clinical staff and use the least amount of force necessary to assist[.]" (*Id.*, ¶ 5.) If he were to see a staff member "strike or

hit a patient—beyond the controlled physical hold required for an involuntary injection—[he] would immediately . . . have them leave the room" and later notify a supervisor and file a report. (*Id.*, ¶ 6.)

Mr. Mixon attached to his declaration a Security Incident Report for the December 12, 2024 incident, signed that day. (Mixon Decl., ¶ 3, Ex. A.) Security was dispatched and Ms. Roder "asked security for assistance with IM BACKUP." (*Id.*, Ex. A at 2.) Security asked Ms. Roder "if they had a hands on order and she said yes. Security then went hands on with the patient and assisted him to the room with a therapeutic manual hold." (*Id.*, Ex. A at 2-3.) Mr. Yu was noncompliant and "started fighting with security" who then "secured the patient in 5 point restraints to his bed." (*Id.*, Ex. A at 3.) "No patient or staff was harmed." (*Id.*)

## II. DISCUSSION

### A. Plaintiff's Request for Deferral

Plaintiff requests that, if summary judgment is not denied, the Court defer ruling on the Motion to permit him to take Dr. Sidhu's deposition. (Resp. at 10-11.) He further asserts he intends to file a second amended complaint to add claims. (*Id.* at 11.)

A court may defer consideration of a summary judgment motion if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to Rule 56[d] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

Plaintiff argues that Dr. Sidhu's deposition is "the single most critical piece of missing discovery" and cites Dr. Sidhu's declaration stating that his recollection of the incident is

"limited." (Resp. at 15 (quoting Sidhu Decl., ¶ 5).) Given that Dr. Sidhu has already reviewed the available records, Plaintiff fails to establish that a deposition would revive his memory or result in any new information. (*See id.*, ¶¶ 4-5.) Plaintiff has not met his burden to identify what facts further discovery would reveal or why they would preclude summary judgment. Accordingly, his request for deferral is denied.

**B. Summary Judgment**

*1. Legal Standards for Summary Judgment*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the non-movant's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the non-moving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . ; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "[T]he requirement is that there be no *genuine* issue of *material* fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the non-moving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

*2. Section 1983 Standards*

To sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir.

1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). If a defendant does not directly cause the alleged injury, they may still be held liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Tatum v. Moody*, 768 F.3d 806, 817 (9th Cir. 2014) (quoted source omitted). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

*3. Excessive Force Standards*

Because Mr. Yu was a pretrial detainee at the time of the alleged excessive force, his claim is analyzed under the Fourteenth Amendment. To succeed on an excessive force claim under § 1983, a pretrial detainee must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation. *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relevant considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security

problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

**C. Plaintiff's Excessive Force Claim**

Considering the *Kingsley* factors, Defendant provides evidence that force was needed because medical staff assessed Mr. Yu as aggressive and an immediate threat, staff used the minimal force needed, Plaintiff was not injured,[3] and Plaintiff was actively resisting compulsory medication. (*See* Mot. at 8-11; Sidhu Decl.; Roder Decl.; Mixon Decl.) Defendant has met his initial burden to show that the force used was objectively reasonable and, thus, did not violate Mr. Yu's constitutional rights.

The burden, accordingly, shifts to Plaintiff to establish a genuine issue of material fact in order to defeat summary judgment. Plaintiff argues that a genuine issue exists over whether the force used was objectively unreasonable because "the decision to apply physical force was made before security personnel had any direct contact with Mr. Yu." (Resp. at 6.) As evidence, Plaintiff offers his counsel's declaration stating that, based on his review of the record, he "understand[s] a 'hands on order' to mean a pre-authorization to apply physical force to a patient, made before direct individualized contact." (Rossi Decl., ¶ 5.) Plaintiff argues that this is "not responsive force" but "predetermined force." (Resp. at 6.) When the force was authorized, however, is not evidence that the force itself was unreasonable.

Defendant presents unrebutted evidence that medical staff determined that Mr. Yu was aggressive and an immediate danger and then called security staff for assistance. (Roder Decl., Ex. A at 6, 15.) Even accepting Plaintiff's proffered evidence, he identifies no reason why security staff would have to see Mr. Yu and conduct their own assessment that force was

[3] Plaintiff argues that the medication caused side effects, due to which it was discontinued. (Resp. at 8.) This is not an injury caused by the allegedly excessive force, however.

required before applying force to assist medical staff as requested. Having "pre-authorization" to apply force does not create a genuine issue of material fact over whether the force used was objectively unreasonable.

Plaintiff next argues that the reports Defendant has submitted were prepared by interested parties, no body camera recordings exist, and no independent review was conducted. (Resp. at 11.) He does not, however, present any evidence to rebut the records and declarations Defendant submitted. Even if Plaintiff's unverified interrogatory responses are considered, Mr. Yu states only that he was struck and bruised and experienced rib pain. He has not rebutted Defendant's evidence that Mr. Yu resisted compulsory medication aggressively and was an immediate threat, making the use of force necessary, nor has Plaintiff offered any evidence that the amount of force was unreasonable in response to the situation.

Plaintiff argues that the lack of staff injuries creates "a significant evidentiary gap." (Resp. at 8.) Plaintiff emphasizes his slight stature, yet argues that it is "highly improbable" if he was indeed aggressive that "six trained security personnel sustained zero injuries." (*Id.* at 6.) The lack of injuries to staff does not create a genuine issue of material fact over whether the force used against Mr. Yu was objectively reasonable.

Finally, Plaintiff argues that whether he understood the offer of oral medication prior to the involuntary injection "is a genuine factual question." (Resp. at 13.) He does not, however, offer any evidence that he did not understand the offer of oral medication or explain how this impacted whether the force used to comply with a state court involuntary medication order was reasonable. Claims related to the state order are not before this Court. (*See* dkt. ## 59 at 4-6, 60.)

Plaintiff has not submitted significant, probative evidence supporting his claim sufficient to defeat summary judgment. *See Intel Corp.*, 952 F.2d at 1558. The Court concludes that

summary judgment should be granted, dismissing Plaintiff's claim. Accordingly, the Court need not reach Defendant's alternative argument that he is entitled to qualified immunity.

## III. CONCLUSION

The Court recommends GRANTING Defendant's Motion for Summary Judgment (dkt. # 66) and DISMISSING this action with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 25, 2026**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Jamal N. Whitehead.

Dated this 4th day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge